UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                              :

ROSALYN TYIESHA SMITH,                :       **MEMORANDUM DECISION**
                                              :       **AND ORDER**

                     Plaintiff,      :
                                              :       20-cv-1386 (BMC)

            - against -            :
                                              :

COMMISSIONER OF SOCIAL SECURITY,   :
                                              :
                     Defendant.     :
                                              :
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not disabled as defined in the Social Security Act and its regulations for the purpose of receiving disability insurance benefits and supplemental security income. The ALJ found that plaintiff has severe physical impairments of tendinosis in her right knee and internal derangement of her right ankle. The ALJ also found that plaintiff has severe mental impairments of major depressive disorder and generalized anxiety disorder.

However, notwithstanding these severe impairments, the ALJ further found that plaintiff has the residual functional capacity to perform sedentary work with restrictions. The restrictions fell into two groups. The first was to accommodate her musculoskeletal accommodations – climbing ramps and stairs only occasionally; never climbing ladders, ropes, or scaffolds; using a cane; and stooping, crouching, and crawling only occasionally. The second was to accommodate her anxiety and depression – performing simple, routine, and repetitive tasks but not at a production rate pace; performing only simple work-related decisions; and interacting with

supervisors, coworkers, and the public only occasionally.  Since a vocational expert testified that there are jobs in the national economy that plaintiff could perform with these restrictions, the ALJ held that plaintiff was not disabled.

Plaintiff raises two points of error, one applicable to her mental health impairments and one related to her musculoskeletal impairments.

## I.      Mental Health Impairments

First, plaintiff argues that if the ALJ was going to give the opinion of the consulting psychologist, Dr. John Nikkah, "significant weight" – as the ALJ said she did – then the ALJ also had to accept Dr. Nikkah's assessment that plaintiff had moderate limitations in her ability to maintain a regular schedule.  Instead of accepting that assessment, plaintiff argues, the ALJ not only failed to provide for plaintiff's moderate limitation in maintaining a schedule, but disregarded it entirely.

I do not agree.  The vocational expert testified that an individual who would miss more than two days of work per month would not be able to maintain employment.  The question before the ALJ, therefore, was whether the moderate scheduling limitation assessed by Dr. Nikkah could be accommodated so that plaintiff would not miss more than two days of work per month.  Because Dr. Nikkah's assessment was based on plaintiff's depression and anxiety, the ALJ determined that lessening the impact of those impairments by allowing her to perform only simple, routine, and repetitive tasks but not at a production rate pace; making only simple work-related decisions; and only occasionally interacting with supervisors, coworkers, and the public would accommodate her moderate scheduling limitation as well as her other mental health limitations.

Plaintiff objects to this analysis on two grounds.  First, she contends, it is procedurally defective because the ALJ did not expressly state that she was accommodating plaintiff's moderate scheduling limitation in this manner.  I agree that it would have been preferable for the ALJ to expressly state that conclusion as I have stated it above.  But I do not agree that it was prejudicial.  Dr. Nikkah opined that plaintiff's psychiatric problems "d[id] not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis," and when the ALJ set forth this opinion, she noted that it "corroborated that while [plaintiff] does have reduced mental residual functional capacity, it does not prevent [plaintiff] from engaging in work activities."  It is apparent that the ALJ implicitly made the connection that I describe above in accommodating plaintiff's scheduling limitation.  That is sufficient for me to be able to review the substance of the ALJ's decision to place significant weight on Dr. Nikkah's opinion.

Plaintiff's second, related objection to this analysis appears to be substantive.  Plaintiff seems to be contending that to hold as she did, the ALJ needed a medical opinion in the record that plaintiff's moderate scheduling limitation would be adequately accommodated by the restrictions that the ALJ placed on plaintiff's sedentary work.  That might be true if the restriction proposed by the ALJ was of a technical nature that could only be substantiated through medical opinion evidence.  But I do not see why a medical opinion was necessary to confirm the ALJ's logical conclusion.

Again, the question before the ALJ was whether there was a reasonable way to limit plaintiff's work activities to accommodate her moderate scheduling limitation.  What, if anything, could be done for someone whose anxiety and depression had a moderate chance of getting in the way of their work schedule?  The obvious answer seems to be the one on which the ALJ settled – to have plaintiff perform only simple, routine, and repetitive tasks at a pace less

than a production rate; make only simple work-related decisions; and interact only occasionally with supervisors, coworkers, and the public. The ALJ's conclusion was a synthesis of the medical opinion evidence and the vocational expert's testimony about what plaintiff's sedentary job might allow. I do not see why a medical opinion was necessary to validate the ALJ's logical conclusion.

## II.    Musculoskeletal Impairments

Plaintiff's objection to the ALJ's work restrictions addressing her knee and ankle impairments is similar to her substantive objection to the ALJ's restrictions addressing her anxiety and depression. She points to the ALJ's observation that there are no medical opinions providing a function-by-function assessment of plaintiff's physical capabilities. According to plaintiff, the ALJ had to have at least one. She relies on statements in cases that "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dailey v. Astrue, No. 09-cv-99, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting Deskin v. Comm'r of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)), report and recommendation adopted, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010).

Broad statements of disability law, particularly from district courts, are of little use when removed from their fact-specific context; indeed, there are so many social security disability decisions that one can find a statement to support a myriad of propositions that seem to conflict on their face. In Dailey, for example, the court addressed a lengthy history of drug addiction and substance abuse. The court then stated, "Although I recognize where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment, this is not such a

4

case." 2010 WL 4703599, at *11 (quotation omitted).  Similarly, <u>Deskin</u> involved a severe and complicated combination of spinal impairments.  <u>See</u> 605 F. Supp. 2d at 910.  Thus, a failure to present the factual context in which courts' statements are made not only deprives them of their utility in considering other cases – worse, if such broad statements are taken literally, they tend to prolong the already lengthy claims resolution process by causing unnecessary remands and rehearings.

No doubt, if a court is grappling with the ability of a construction worker with a history of myocardial infarction to do his past relevant work, some medical assessment of RFC is going to be necessary.  Here, in contrast, plaintiff's musculoskeletal impairments are straightforward – not to minimize them, as they are severe, but plaintiff has a bad knee and a bad ankle.  It doesn't require a function-by-function assessment from a physician to conclude that the only possible job is sedentary; that plaintiff needs to use a cane; that she should never do any climbing; and that she should only occasionally have to stoop, crouch, or crawl.

Plaintiff's motion for judgment on the pleadings [11] is denied, and the Commissioner's motion for judgment on the pleadings [14] is granted.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       March 22, 2021

5